**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **S.L.**

**No. 21-0069** (Marion County 20-JA-5)

## MEMORANDUM DECISION

Petitioner Father B.L., by counsel David B. DeMoss, appeals the Circuit Court of Marion County's December 9, 2020, order terminating his parental rights to S.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Emily Lewis, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in not providing him enough time to file a motion for an improvement period. Petitioner further argues that his counsel below provided ineffective assistance.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2019, the DHHR received a referral indicating that the mother tested positive for methamphetamine upon giving birth to M.M., a child not at issue on appeal. The mother denied abusing methamphetamine and claimed that she must have smoked marijuana unknowingly laced with methamphetamine. Nurses also reported observing M.M.'s father and his friend in the bathroom of the hospital and smelled marijuana emanating from the room. During the resulting investigation, the DHHR discovered that the mother had an older child, then-two-year-old S.L., and she reported that petitioner was that child's father. The mother disclosed that petitioner had only met the child once when she was approximately six months old, had no other contact with the child, and did not pay child support. The mother continued to deny abusing methamphetamine but

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

admitted frequent marijuana use. A Child Protective Services ("CPS") case was opened, and services were offered at that time.

In August of 2019, a new CPS worker was assigned to the case and she attempted to contact the mother due to her failure to participate in services and random drug screening. Despite multiple attempts, the CPS worker was unable to locate the family. In September of 2019, the DHHR received another referral regarding the children. The referral indicated that the mother and her boyfriend were abusing methamphetamine and other drugs in the presence of the children and that the mother's boyfriend was aggressive when he was under the influence. The referral indicated that the boyfriend had previously attacked the mother and his grandfather in front of the children.

The CPS worker eventually located S.L. in November of 2019 at the home of M.M.'s paternal grandparents. The grandmother reported that the mother frequently dropped either of the children off for several days but did not live in the home herself. The grandmother expressed concerns that the mother was continuing to use drugs and that both children were behind in their medical care. The CPS worker was not able to locate the mother and her boyfriend until December of 2019. At that time, the mother had S.L. in her care. The CPS worker reminded the mother that safety services were in place, instructed them to submit to drug screens, and instructed them to attend parenting and adult life services classes. Thereafter, the mother submitted to two drug screens, one of which was positive for marijuana. In January of 2020, the mother and her boyfriend engaged in domestic violence, leading to the boyfriend's arrest.

Later that month, the DHHR filed a child abuse and neglect petition against the mother and her boyfriend, setting out the above-mentioned facts. In February of 2020, the circuit court ordered paternity testing for petitioner as he was purported to be S.L.'s father. The CPS worker spoke to petitioner at that time, and he indicated that he was S.L.'s father and agreed to submit to paternity testing for confirmation and take custody of the child if the mother's parental rights were terminated. The paternity testing confirmed that petitioner was S.L.'s father.[2] CPS attempted to contact petitioner to inform him of the results but was unable to reach him, and petitioner failed to contact the worker despite text messages and voicemails asking him to do so.

At a multidisciplinary team ("MDT") meeting held in August of 2020, the mother informed the members that she told petitioner of the results of the paternity test. She further indicated that he had recently been hospitalized following an overdose on methamphetamine. The DHHR filed an amended petition adding petitioner to the proceedings shortly thereafter, raising allegations of abandonment and substance abuse. The circuit court held a preliminary hearing in September of 2020. Petitioner failed to attend but was represented by counsel. Counsel agreed with the DHHR's characterization of the hearing as "moot" and did not object to setting the matter for adjudication.

In October of 2020, the circuit court held an adjudicatory hearing. Petitioner failed to attend but was represented by counsel. The DHHR presented the testimony of the CPS worker, who testified that petitioner initially indicated that he was interested in taking custody of S.L. but failed to maintain consistent contact with the worker. The CPS worker indicated that she initially had

---

[2]The results of the paternity testing, which were produced in July of 2020, were delayed due to the COVID-19 pandemic.

difficulty reaching petitioner but that she obtained new contact information for petitioner following the August of 2020 MDT meeting and was then able to reach petitioner. At that time, petitioner admitted to overdosing but stated he would do whatever he needed to do to gain custody of S.L. The CPS worker testified that she instructed petitioner to submit to drug screens and attend services. Thereafter, petitioner failed to submit to any drug screens, and petitioner contacted the CPS worker only once to inform her that he was going to Chicago, Illinois, for work. The CPS worker opined that he demonstrated the settled purpose to forego any parenting responsibilities to the child, constituting abandonment.

Following testimony, the circuit court found that petitioner had acknowledged that S.L. was his child, which was later confirmed by paternity testing. The circuit court further found that petitioner was fully aware of the proceedings and his ability to contact the DHHR to establish visitation and comply with drug screens but failed to appear at the hearings and failed to submit to drug screens. The circuit court also found that petitioner left West Virginia and had not requested visitation with the child despite his indications that he wanted to be involved in the case. Accordingly, the circuit court adjudicated petitioner as an abusing parent.

The circuit court held the dispositional hearing in November of 2020. The CPS worker testified that petitioner made no attempts to contact her or participate in services since the adjudicatory hearing. Following that testimony, the circuit court found that petitioner failed to participate in services established by the DHHR, including drug screens and parenting and adult life skills classes. The circuit court further found that based upon petitioner's failure to participate, there was no reasonable likelihood that he could correct the conditions of abuse in the near future and that termination of his parental rights was in the child's best interest. Petitioner appeals the December 9, 2020, dispositional order terminating his parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[3]The mother's parental rights were also terminated below. M.M.'s father's parental rights were also terminated below. The children were placed together in a foster home, and the permanency plan for the children is adoption by their foster family.

On appeal, petitioner argues that the circuit court erred in "not allowing ample time for [him] to request and/or complete a period of improvement." Petitioner contends that he informed the CPS worker on multiple occasions that he would like to participate in services but "was not sure how to follow through with it." Petitioner also moved to Chicago and "was not sure how to participate in the case." Petitioner states that CPS did not assist him in setting up services that would allow him to improve his parenting. Petitioner notes that he submitted to paternity testing when requested. Petitioner states that from the filing of the petition until the dispositional hearing, only four months had elapsed, and he was not afforded ample time to complete an improvement period.

As this Court has recognized, a parent bears the burden of establishing that he is likely to fully comply with an improvement period in order to obtain one. *See In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the [parent] is likely to fully participate in the improvement period'") (citation omitted). Here, the record overwhelmingly establishes that petitioner failed to satisfy this burden given his failure to participate in any aspect of the proceedings. Although petitioner claims that he submitted to a paternity test and indicated his desire to gain custody of the child, the record indicates that petitioner was informed how he could participate through attending MDT meetings and hearings, submitting to drug screens, and attending parenting and adult life skills classes. Rather than following through with these efforts, petitioner failed to attend a single hearing, failed to maintain contact with his counsel or the DHHR, and failed to avail himself of any services offered. Further, petitioner moved to Chicago during the proceedings and failed to take any steps to identify how or if he could participate in services from Illinois. Based on the foregoing, we find petitioner's claims that he should have been permitted additional time to comply with an improvement period to be disingenuous given his complete lack of participation below. Because petitioner failed to satisfy this burden, we find no abuse of discretion in the circuit court's denial of his motion for an improvement period. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

To the extent petitioner takes issue with the time frame of the proceedings below, we note that the circuit court complied with the timeframes set forth in the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. Rule 25 provides that "the final adjudicatory hearing shall commence within thirty (30) days of the temporary custody order entered following the preliminary hearing and must be given priority on the docket unless a preadjudicatory improvement period has been ordered." Further, Rule 32(a) provides that the "disposition hearing shall commence within forty-five (45) days of the entry of the final adjudicatory order unless an improvement period is granted pursuant to W.Va. Code § 49-4-610(2) and then no later than thirty (30) days after the end of the improvement period." Here, the amended petition was filed against petitioner on August 24, 2020. The preliminary hearing order was entered on September 15, 2020, and the adjudicatory hearing was held twenty-eight days later on October 27, 2020. Additionally, the notice was provided thirty-five days prior to the dispositional hearing, and the dispositional

4

hearing was held twenty-one days after the entry of the adjudicatory order. To the extent petitioner now claims he should have been given more time to comply, we note that he failed to request a continuance at any time during the proceedings. Given this information, the circuit court was clearly within the timeframes contemplated by the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and we find that petitioner is entitled to no relief in this regard.

The evidence set forth above likewise supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner failed to follow through with rehabilitative efforts designed to reduce or prevent the abuse or neglect of the child. Petitioner refused to maintain contact with the DHHR or his counsel, failed to check in on the child or request visitation, moved out of the state, and failed to submit to any drug screens or attend parenting or adult life skills classes. Given petitioner's complete lack of participation in the proceedings, it is clear that he failed to remedy the conditions of abuse or neglect. While petitioner claims that he should have been granted an improvement period or that his dispositional hearing should have been delayed before his parental rights were terminated, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because petitioner failed to participate in the proceedings despite having notice of the same and being aware that his parental rights were at risk, we find that sufficient evidence existed to terminate his parental rights and that he is entitled to no relief in this regard.

Finally, we note that petitioner argues that he was provided ineffective assistance of counsel throughout the proceedings. This Court has never recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding, and we decline to do so here.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 9, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 3, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton